1
2
3
4
5                      IN THE UNITED STATES DISTRICT COURT FOR THE
6
7                            EASTERN DISTRICT OF CALIFORNIA
8
9

10    KEVIN ALEXANDER BOYCE,               2:06-cv-01944-RCT

11

12          Petitioner,

13                                MEMORANDUM DECISION AND

14    v.                                       ORDER

15

16    L. SMALL, Warden,[*]

17

18          Respondent.

19

20

21          This matter comes before the Court on Kevin Alexander Boyce's petition for writ of

22 habeas corpus pursuant to 28 U.S.C. § 2254.

23                                INTRODUCTION

24          On August 30, 2006, Boyce, a California state prisoner, filed his first Petition for Writ of

25 Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  On May 2, 2007, he

26 was granted leave to file an amended petition and, by order of this court on May 27, 2007, he was

27 granted both an extension of time to file his first amended petition and appointment of counsel.

28 Boyce's Amended Petition ("Amended Petition") was filed by counsel on October 30, 2007.  On

---

           [*]      Larry Small is substituted for his predecessor, T. Felker, as the warden where the petitioner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

PDF created with pdfFactory trial version www.pdffactory.com

1    December 27, 2007, Respondent filed his Answer/Response to the Petition ("Answer") and Boyce

2    filed a Traverse to Respondent's Answer ("Traverse") on January 28, 2008.

3                              FACTUAL AND PROCEDURAL HISTORY

4           The facts underlying the Boyce's conviction are not in dispute in these proceedings.

5    Accordingly, the court will quote directly from the California Court of Appeal's statement of facts

6    presented in its opinion affirming the Boyce's conviction.

7           Shortly before 10:00 a.m. on November 26, 2002, Deputy Manning [a 20-year
8           veteran of the Sacramento County Sheriff's Department] was on routine patrol
9           with his partner, Deputy John Foster, when they received a radio dispatch
10          concerning a suspicious person.[1]  According to Manning, the dispatch stated:
11          "BMJ-Black male juvenile-wearing black pants, a gray down jacket, looking in
12          windows of cars and houses, knocked on several doors, last seen walking on
13          Harrison towards Myrtle from Tresler in his teens, five-two, thin build.
14          Complainant thinks he's casing the area."
15
16          The deputies drove to the area identified in the dispatch.[2]  While traveling
17          southbound on Harrison Street at 10:12 a.m., Deputy Manning saw defendant
18          walking northbound along the edge of the southbound lane.  Deputy Foster pulled
19          the patrol car over to the curb, and parked it about 10 feet in front of defendant.
20          Defendant was wearing baggy gray pants and a heavy, black down jacket and was
21          the only individual in the area generally fitting the dispatch description of the

───────────────

       [1] On cross-examination [during a hearing on the defendant's motion to suppress
evidence], Deputy Manning acknowledged that they more likely received the dispatch at 9:39
a.m., in accordance with the dispatch log.

       [2] Deputy Manning testified that he and Deputy Foster initially contacted the citizen
complainant, Anna F., for a few minutes, "to get a little more physical description."  She directed
the deputies to a second witness, Oleg K., who lived across the street.  On cross-examination,
after viewing Deputy Foster's incident report, Manning admitted the citizen contacts were
probably initiated after defendant was searched.

                                          2

1   suspect.  Manning admitted defendant was taller than five feet two inches, and that
2   he had a mustache and goatee, although facial hair was not mentioned in the
3   dispatch.[3]  Defendant did not appear to Manning to be a teenager or to have a thin
4   build, although his physique was obscured by his clothing.   Notwithstanding these
5   deviations from the physical description of the suspect, Manning testified he would
6   have stopped for questioning anyone in the vicinity generally matching the
7   description of the suspect.
8
9   Deputy Manning left his patrol car and approached defendant and asked if they
10  could talk, while directing him to remove his hands from his pockets.  As
11  defendant complied, two gold bracelets fell out of his right coat pocket.  At that
12  point, defendant was only a few feet from Manning, who positioned himself behind
13  defendant, and took hold of him with one arm while conducting a patdown search
14  for weapons with the other.  Manning testified he frisked defendant for officer
15  safety, since he had often seized concealed weapons from burglary suspects.
16
17  By this time, a third deputy (Dianne Patton) had arrived, and Deputy Manning
18  instructed her to pick up the bracelets and hand them back to defendant.  When
19  Patton did so, defendant threw the bracelets into some nearby bushes.  During the
20  search, Manning felt a semi-rigid box shape under defendan's left shoulder.
21  Manning thought it might be a shoulder holster or case containing a weapon.  As
22  he concluded the patdown, Manning asked defendant to remove the object, which
23  turned out to be a box containing a digital camera.  Suspecting that the camera
24  was stolen, Manning then searched defendant's pockets, and recovered a pair of
25  gloves, a wet washcloth, women's jewelry, money, and baggies containing
26  marijuana.  Defendant was handcuffed and placed in the back of a patrol vehicle.

---

[3] The parties stipulated that on the date of his arrest, defendant was 27 years old, weighed
170 pounds, and was five feet nine inches tall.

3

1    An in-field show-up was conducted, at which Oleg K. identified defendant as the
2    prowler he had seen that morning.[4]
3

4    Before trial, Boyce filed a motion to suppress evidence obtained during the officers' stop

5    on November 24, 2002.  The court held a preliminary suppression hearing on May 9, 2003.  The

6    sole witness at this hearing was Deputy Foster.  He testified that before the search, he and his

7    fellow deputies had twice been briefed on recent burglaries in his patrol area, "which encompassed

8    North Highlands, Antelope, Rio Linda and Garden Highway in the unincorporated area of

9    Sacramento County."

10    On February 20, 2004, Boyce was convicted by a jury of three counts of residential

11    burglary under California Penal Code section 459 and four counts of possession of stolen property

---

[4] On cross-examination, defense counsel attempted to impeach Deputy Manning with a statement he made in his declaration of probable cause, prepared on the date of the search, that defendant dropped two gold bracelets from his right front coat pocket "during a pat search for weapons."  Manning responded that the bracelets fell out of defendant's pockets as he was positioning himself to conduct the search, and that his use of the word "during" was not intended to signify otherwise.

At the preliminary hearing, Deputy Foster testified that he did not see defendant throw anything because he was about 10 feet away, near the rear corner of the patrol vehicle when Deputy Manning approached defendant.  Foster's incident report stated that defendant threw two gold bracelets into a tree as Manning approached him, and that Deputy Patton retrieved the bracelets.  Foster testified that this aspect of his report was based on what Manning told him.

Deputy Patton also testified at the preliminary examination.  She testified that it appeared to her that defendant tossed the bracelets after Manning ordered him to take his hands out of his pockets.

Although the suppression motion incorporated the transcript of the preliminary hearing, defendant did not specifically rely upon it in his motion to suppress.

4

PDF created with pdfFactory trial version www.pdffactory.com

1    under California Penal Code section 496(a).  The  trial court sentenced him to an aggregate state

2    prison term of twenty-four years, eight months.

3         Boyce appealed his conviction and sentence to the California Court of Appeal, which then

4    affirmed the trial court's judgment in an unpublished decision on June 30, 2005.  (Lodged Doc.

5    No. 4 at 1).  He thereafter filed a petition for review in the California Supreme Court, which was

6    denied on September 7, 2005, without comment or citation to authority.  (Lodged Doc. No. 6).

7    He then filed a Pro Se Petition for Writ of Habeas Corpus with the California Supreme Court.

8    (Lodged Doc. No. 7)  That petition was denied because Boyce had failed to raise the issues

9    claimed in his pro se petition during his direct appeals.

10        His Amended Petition before this court contains only one issue—a violation of his Fourth

11   Amendment rights—which was exhausted on direct appeal in the California state courts.  *See*

12   *Picard v. Connor*, 404 U.S. 270 (1971) (holding that a petitioner can satisfy the exhaustion

13   requirement in 28 U.S.C. § 2254 by providing the highest state court with a full and fair

14   opportunity to consider each claim before presenting it to the federal court); *see also Johnson v.*

15   *Zenon*, 88 F.3d 828, 829 (9th Cir. 1996).  The unexhausted issues contained within his Pro Se

16   Petition before the California Supreme Court were not raised in his Amended Petition, and are not

17   considered in this decision.

18                                        CLAIM

19        We address the following exhausted claim from Boyce's amended petition:

5

PDF created with pdfFactory trial version www.pdffactory.com

1      1.     Whether Boyce's Fourth Amendment rights were violated when he was illegally
2           searched and detained.
3                               LEGAL STANDARD

4        A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

5  merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary

6  to, or involved an unreasonable application of, clearly established federal law, as determined by

7  the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination

8  of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).  Under the

9  "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a

10  conclusion opposite to that reached by the Supreme Court on a question of law or if the state

11  court decides a case differently than the Supreme Court has on a set of materially indistinguishable

12  facts.  *Williams v. Taylor*, 529 U.S. 362, 412–413 (2000).  Under the "unreasonable application"

13  clause, a federal habeas court may grant the writ if the state court identifies the correct governing

14  legal principle from the Supreme Court's decisions but unreasonably applies that principle to the

15  facts of the prisoner's case.  *Id.*

16        A determination of a factual issue by a state court is presumed correct, and the applicant

17  has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28

18  U.S.C. § 2254(e)(1).

19

20

6

1                                    DISCUSSION

2          Boyce bases his Fourth Amendment challenge on two arguments.  First, that the police

3   unlawfully detained him in the absence of objective and particularized suspicion.  Second, that the

4   trial court erred in denying his motion to suppress evidence obtained during his patdown search.

5   However, claims grounded in a belief "that evidence [was] obtained in an unconstitutional search

6   *or* seizure was introduced at [ ] trial" are not cognizable on habeas review.  *Stone v. Powell*, 428

7   U.S. 465, 494 (1976) (emphasis added).

8          "Where the State has provided an opportunity for full and fair litigation of a Fourth

9   Amendment claim, a state prisoner may not be granted federal habeas corpus relief" for denial of a

10  motion to suppress evidence.  *Id*.  "The relevant inquiry is whether petitioner had the opportunity

11  to litigate his claim, not whether he did in fact do so or even whether the claim was correctly

12  decided."  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).

13         Here, Boyce availed himself of California Penal Code section 1538.5, which provides the

14  opportunity to move to suppress unlawfully obtained evidence.  In the Superior Court of

15  California, County of Sacramento, he filed a motion to suppress all evidence obtained during the

16  search.  (Lodged Doc. No. 11, at 203, 205).  Boyce argued that the State had not carried its

17  burden of justifying a warrantless search or seizure against him, (Lodged Doc. No. 11, at 207–08,

18  480–82, 676–78), and the court held a hearing on May 9, 2003 (Lodged Doc. No. 10, at 1).

7

PDF created with pdfFactory trial version www.pdffactory.com

1       Deputy Manning testified on behalf of the state, and Boyce was provided an opportunity to

2   cross-examine his testimony.  (Lodged Doc. No. 10, at 23–43).  Both Boyce's attorney and the

3   attorney for the State then had the opportunity to address the court and present their legal

4   arguments.  (Lodged Doc. No. 10, at 46–55).  Boyce's counsel was permitted rebuttal in order to

5   respond to arguments made by the State, and he also submitted an additional memorandum of

6   points and authorities at the close of his argument.  (Lodged Doc. No. 10, at 55–57).  The court

7   then considered the parties' motions, testimony, arguments, and Boyce's supplemental points and

8   authorities before making its ruling denying the motion to suppress.  (Lodged Doc. No. 10, at 58).

9       It ruled that the officers had reasonable suspicion to stop Boyce following the dispatch call.

10  (Lodged Doc. 10, at 58).  Boyce's clothing was close to the description given by the complainant,

11  and the disparity in age was not significant because "[d]ifferent people look and wear their age

12  differently.  People can look significantly older or significantly younger than their actual age."

13  (Lodged Doc. 10, at 58).  It also ruled that the patdown search was not unreasonable because

14  "once the officer felt what's called a semi-rigid box shape against the side of the defendant he

15  could believe and might believe that it was a weapon."  (Lodged Doc. No. 10, at 59).  Finally, the

16  court held that the resulting arrest was supported by probable cause.  (Lodged Doc. No. 10, at

17  59).

PDF created with pdfFactory trial version www.pdffactory.com

1          Boyce raised his Fourth Amendment claims arguing that the detention and search were

2    unconstitutional both in his appeal to the California Court of Appeal and in his petition for review

3    to the California Supreme Court.

4          As the foregoing background demonstrates, Boyce received an opportunity for full and fair

5    litigation of his Fourth Amendment claims in the state courts, and fully availed himself of that

6    opportunity.  *See Gordon v. Duran*, 895 F.2d 610, 613–14 (9th Cir. 1990) (California Penal Code

7    section 1538.5 provides a defendant with a "full and fair" opportunity to litigate a Fourth

8    Amendment search and seizure claim in state court.).  "All *Stone v. Powell* requires is the initial

9    opportunity for a fair hearing."  *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).  "Such an

10   opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the

11   trial court's subsequent course of action."  *Id.*

12         Therefore, it is hereby

13         **ORDERED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C.

14   § 2254 is **DISMISSED**.  The case is dismissed with prejudice.

15         The Clerk is directed to send uncertified copies of this Order to all counsel of record and to

16   any party appearing pro se at said party's last known address.

17         DATED this 2nd day of June, 2009, at Seattle, Washington.

18                                             /s/ Richard C. Tallman
19                                             UNITED STATES CIRCUIT  JUDGE
20                                             Sitting by Designation

9

PDF created with pdfFactory trial version www.pdffactory.com